IN THE MATTER OF N.J.A.C. 11:5–1.32—RENTAL LOCATION OPERATIONS.

Superior Court of New Jersey
Appellate Division

Argued March 30, 1981—Decided June 10, 1981.

Before Judges MICHELS, KOLE and ARD.

*Kevin J. Coakley* argued the cause for appellants Dan De Fiores, Vince Converso, Les Brownlee, Dick Curtis, Nick Vanditty, Jean Lynch and Augusto Ferreira (*Connell, Foley & Geiser*, attorneys; *Kevin J. Coakley*, of counsel; *Kevin R. Gardner*, on the brief).

*Elise Goldblat*, Deputy Attorney General, argued the cause for respondent New Jersey Real Estate Commission (*James R. Zazzali*, Attorney General of New Jersey, attorney; *Judith A. Yaskin*, former Acting Attorney General, and *Erminie L. Conley*, Assistant Attorney General, of counsel; *Elise Goldblat*, on the brief).

The opinion of the court was delivered by

MICHELS, P. J. A. D.

This appeal concerns the validity of the 1981 amendment to *N.J.A.C.* 11:5–1.32 promulgated by the New Jersey Real Estate Commission (Commission). The amendment, which is now in effect, substantially altered the Commission's former rules and regulations governing the furnishing of rental location listings by real estate brokers licensed in this State.

Prior to January 1, 1981, the effective date of the amendment under attack, a rental location licensee could collect the entire

fee for its listing of possible rental units or locations upon the execution of a written contract by a prospective tenant. If, however, the prospective tenant did not, after using "bona fide" efforts, find a suitable rental unit conforming to his specifications through the furnished listings, the licensee was obligated to refund all but $10 of the fee collected. Additionally, the licensee was only prohibited from referring prospective tenants to nonexistent addresses and to properties which were not for lease or rent.

Concerned over numerous complaints from customers of licensed rental location operations who claimed to have been denied refunds to which they were entitled, the Commission proposed a revision of *N.J.A.C.* 11:5–1.32. Under the proposed revised regulation the refund system was replaced by a system whereby, on the execution of a written contract, the prospective tenant would only pay an initial fee of $10 for the licensee's rental listing. The licensee's right to the balance of the fee would not accrue until the prospective tenant had obtained a rental unit from the listing furnished by the licensee. The proposed regulation no longer required the prospective tenant to use "bona fide" efforts to find a suitable rental unit or location. In addition, the proposed regulation prohibited a licensee from referring a prospective tenant to a rental unit without first having secured the lessor's or his duly authorized agent's consent to do so. Moreover, where such consent was verbal, rather than written, the licensee was required to confirm the consent in writing within 24 hours of its being given. No limit, however, was placed on the amount that the licensee could charge those satisfied customers who obtained a rental.

Notice of the revised regulation was published in the *New Jersey Register* on July 10, 1980. All interested persons were invited to submit their written statements to the Commission or to attend a public hearing on the proposed revision scheduled for July 22, 1980. The public meeting was held as scheduled, at which time oral and written statements were presented to the Commission. On October 8, 1980 the Commission adopted the

amendment to the regulation substantially in its proposed form, and notice of the adoption was published in the *New Jersey Register.* The regulation, as amended, became effective on January 1, 1981 and reads as follows:

11:5–1.32 Rental location operations

(a) Every licensee involved in the business of referring prospective tenants to possible rental units or locations shall enter into a written contract with the prospective tenant and give such person a copy of the contract. The licensee must disclose the manner in which the listings or units had been obtained. No licensee shall charge, accept, or receive from a prospective tenant a fee in excess of $10.00 until such time as the prospective tenant obtains a rental through the listings furnished by the licensee. If the information concerning rentals furnished by the licensee is not current or accurate in regard to the type of rental desired, the full fee shall be repaid or refunded to the prospective tenant upon demand.

(b) No licensee shall refer a prospective tenant to:

1. A nonexistent address;

2. Property which was not for lease or rent;

3. A possible rental unit or location for which the licensee does not have the lessor's, or his duly authorized agent's verbal or written consent to refer prospective tenants. Any such verbal consent shall be confirmed by the licensee, in writing, within twenty-four (24) hours of the licensee's receipt of such consent.

(c) All contracts must contain a copy of this regulation or a certification in 10-point bold type or larger placed directly above the space provided for the signature of the prospective tenant that a separate copy of the rule has been provided.

Appellants, a group of licensed real estate brokers of the State of New Jersey, who had previously participated in "rental location operations" in this State, challenge the validity of the 1981 amendment on grounds that (1) it constitutes rate-making which is beyond the powers delegated to the Commission in its enabling legislation, and (2) it is arbitrary in nature and confiscatory in effect. We have carefully considered these contentions and all of the arguments advanced by appellants in support of them and find that they are clearly without merit. *R.* 2:11–3(e)(1)(E).

We would merely add that the standards of judicial review of regulations promulgated by an administrative agency are thoroughly discussed and clearly stated in *New Jersey Guild of*

*Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 560–563 (1978). Application of those principles to appellants' challenge to the 1981 amendment to *N.J.A.C.* 11:5–1.32 compels the conclusion that the regulation does not exceed the scope of the broad delegation of power to the Commission under the Real Estate License Act (*N.J.S.A.* 45:15–1 *et seq.*) and that the amendment is not arbitrary, capricious or unreasonable. The 1981 amendment was promulgated by the Commission to correct documented abuses within the real estate industry, and is fully consistent with the goals of our Real Estate License Act, to wit, to protect the public from fraud, incompetence, misrepresentation and sharp or unconscionable practices, and to ensure that the real estate industry in this State is conducted reputably, honorably, competently and conscientiously. Prohibiting rental location operations from collecting fees in excess of a maximum amount before rendering promised services will serve to discourage and prevent false promises, substantial misrepresentations, bad faith and dishonesty—conduct expressly forbidden by *N.J.S.A.* 45:15–17, but previously engaged in by rental location operations. Furthermore, most businesses, unlike rental location operations, do not customarily collect for services before rendering them. The expectation of a fee normally serves as an economic incentive to the proper supply or rendition of promised goods and services. Consequently, the Commission could reasonably conclude that the prepayment of fees to rental location operations enable and contributed to the indifferent and negligent rendering of promised services. The Commission could also conclude that unlike the refund requirement of the earlier regulation, the prohibition against the collection of advanced fees of the 1981 amendment might well serve as a deterrent to the complained-of past practices and provide an effective means of assuring that the services promised by rental location operations will in fact be rendered.

Contrary to appellants' claim, the 1981 amendment to *N.J.A.C.* 11:5–1.32 does not constitute illegal rate-making. The amendment does not establish a schedule of maximum fees to be

charged for the services rendered by rental location operations. It simply prohibits the collection of a fee in excess of $10 prior to the prospective tenants obtaining a rental unit through lists furnished by the rental location operation. The amendment does not restrict the amount of the fee to be collected after the rental unit or location has been obtained, nor does it restrict a rental location operation from collecting* fees from lessors for listing their rental units or for locating tenants for such listed units. The amendment simply removes the burden of collecting back money from rental location operations when promised services are not rendered, and shifts the burden of collecting the fee when earned to the rental location operation. This shift in the burden of collection is entirely reasonable and proper in light of the past fraudulent practices of rental location operations.

A challenge to a municipal ordinance which prohibited rental agencies from collecting advanced fees, similar to that leveled against the 1981 amendment to *N.J.A.C.* 11:5–1.32, was rejected by the Washington Supreme Court in *Homes Unlimited, Inc. v. City of Seattle*, 90 *Wash.*2d 154, 579 *P.*2d 1331 (1978). There, in declaring the ordinance valid, the court, in part, stated:

> ... Here there was evidence before the Seattle City Council which showed (and were we unaware of such evidence, we would not find it difficult to conceive) that fees were exacted by rental agencies before the information promised was supplied and that, thereafter, customers experienced great difficulty in getting access to information, that the information supplied was often erroneous, and that a great deal of frustration and disappointment was suffered by these customers. There was also evidence that such agencies are not very stable and frequently go out of business, leaving customers to whom services are still owed. When these facts are viewed in the light of the further fact that such agencies have gone far in "cornering the market" with respect to rental information, it is not surprising that the legislative body concluded that the prepayment of fees was an important factor which enabled and encouraged the negligent and indifferent rendering of promised services. As the petitioner points out, businesses do not customarily collect for services before they are delivered, and certainly the provision is not unreasonable on its face. It cannot be said that it bears no reasonable relation to the legislative objective. Whether it was necessary was properly a legislative decision.
>
> It cannot be held as a matter of law that the criminal penalties and licensing provisions provide adequate remedies to achieve the legislative purpose. The City may well have determined that a provision forbidding the exaction of

prepayment was the most effective means of assuring that promised services would be rendered.

The respondents point to the trial court's finding that they will be forced out of business by this ordinance. While, as they maintain, they do indeed have the right to engage in a lawful business, they must do so in a lawful manner. The fact that, as a practical matter, they will have difficulty collecting fees if their present method of doing business is continued, does not make the ordinance confiscatory. This law being enacted pursuant to the City's police power and reasonably designed to achieve a legitimate purpose of the City, and not being shown to be clearly unreasonable, arbitrary or capricious, it is the respondents' obligation to conduct their businesses in conformance with it. If that cannot be done, the conclusion must be reached that the business is unlawful. Since the City had the right to find that the rental agency business was detrimental to the public interest and to forbid it altogether, the fact that it may have done so indirectly does not render the law invalid.

Since the provision in question bears a reasonable relation to the legislative purpose and is not shown to be clearly unreasonable, arbitrary or capricious, and since the question of its necessity was solely for the consideration of the body which enacted it, the Court of Appeals erred in holding it unconstitutional. With respect to that provision, the decision is reversed and the judgment of the trial court is reinstated. [579 *P.2d* at 1334–1335]

Accordingly, we uphold as valid and enforceable the 1981 amendment to *N.J.A.C.* 11:5–1.32.